Not for Publication

**United States District Court**
**for the District of New Jersey**

| | |
|---|---|
| LIME TREE ASSOCIATES, LLC, *Plaintiff*, v. THE BURLINGTON INSURANCE COMPANY, *Defendant*. | Civil No.: 13-6017 (KSH) **Opinion** |

**Katharine S. Hayden, U.S.D.J.**

This action arises out of an insurance coverage dispute involving a commercial liability policy that was issued by defendant The Burlington Insurance Company ("Burlington"). Plaintiff Lime Tree Associates, LLC ("Lime Tree LLC") claims that it is entitled to coverage because it merged with and assumed all rights and liabilities of the named insured. At issue here is whether the policy's exclusionary language precludes a transfer of rights. This Court answers that question in the negative and grants Lime Tree LLC's motion for judgment on the pleadings. [D.E. 6]

**I. Background**

The insurance policy in dispute here—Comprehensive General Liability Insurance Policy #HGL0021127 (the "Policy")—was issued by Burlington and provided coverage to Lime Tree Associates from April 15, 2009 to April 15, 2010. (Compl. ¶ 2.) During the Policy's term, on October 12, 2009, a young man named Michael Brewer was attacked and set on fire while walking home from school. (Compl. ¶ 4.) The attack occurred on property owned by Lime Tree Associates—the Lime Tree Village apartment complex (the "Village")—and located in Deerfield

1

Beach, Florida. (Compl. ¶¶ 1, 4.) Lime Tree Associates reported the incident to Burlington and filed a claim for coverage under the Policy. (Compl. ¶ 4.)

Lime Tree Associates subsequently merged with and into Lime Tree Associates LLC ("Lime Tree LLC"). The process for effecting this merger was as follows: On November 22, 2010, Lime Tree LLC was formed as a New Jersey limited liability company and, on that same day, the partners of Lime Tree Associates agreed to merge with Lime Tree LLC under the proposed terms of an Agreement and Plan of Merger (the "Agreement"), which was formally executed on December 1, 2010. (Compl. ¶¶ 5, 6.) On December 15, 2010, the effective date of the merger, authorized signatories of Lime Tree LLC and Lime Tree Associates signed the Certificate of Merger and filed it with the Treasurer of the State of New Jersey. (Compl. ¶ 7.)

Approximately two and one half years after the merger (and three years after the Policy's expiration), Michael Brewer, the victim of the attack, filed a lawsuit (the "Brewer Action") against Lime Tree LLC and Lime Tree Associates among others. (Compl. ¶ 13.) He alleged that Lime Tree LLC was responsible for Lime Tree Associate's failure to provide him with a reasonably safe environment at the Village property; that Lime Tree Associates should have anticipated the type and risk of such an attack; and that, despite the obvious risks of doing so, Lime Tree Associates stored flammable liquids in an all too accessible area on property. (Compl. ¶ 13.)

As the surviving entity following the merger, Lime Tree LLC tendered the matter to Burlington for defense and indemnification. (Compl. ¶ 14.) It claimed that after the merger it had assumed all of Lime Tree Associates' assets and liabilities, including "potential liability based on Brewer's pending causes of action against Lime Tree Associates and the rights and benefits of the [Policy]." (Compl. ¶ 12.)

2

Burlington accepted the defense of Lime Tree Associates under a reservation of rights and filed an answer on its behalf in the Brewer Action. (Compl. ¶ 15.) However, on June 25, 2013, Burlington denied coverage to *Lime Tree LLC*—"and consequently, defense and indemnification against Brewer's Complaint"—based on its contention that Lime Tree LLC did not meet the definition of an "insured" under the Policy. (Compl. ¶ 15.) Lime Tree LLC then commenced this action seeking a declaration that it is entitled to a defense and indemnification from Burlington as well as counsel fees and costs. (Compl. ¶¶ 17–26.) Lime Tree LLC now moves for judgment on the pleadings under Fed. R. Civ. P. 12(c) [D.E. 6], and Burlington cross-moves for the same relief [D.E. 7].

## II. Discussion

### A. Cross-Motions for Judgment on the Pleadings

#### 1) Standard

Pursuant to Fed. R. Civ. P. 12(c), judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Insurance Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). In deciding a motion for judgment on the pleadings, the court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* The court considers only "the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiffs' claims are based up on those documents." *Alves v. Ferguson*, No. 01-789, 2010 WL 3155128, *2 (D.N.J. Aug. 9, 2010) (Cavanaugh, J.) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

3

The parties here "agree that there are no issues of fact that preclude a judgment on the pleadings." (Burlington Opp'n Br. 7.). Lime Tree LLC argues that it is entitled to coverage because the merger vested Lime Tree LLC—"automatically" and "as a matter of law"—with all rights (and liabilities) of Lime Tree Associates, including all rights as an insured under the Policy. (Lime Tree Moving Br. 7.) Burlington, by contrast, contends that Lime Tree LLC's claims must be dismissed because the Policy prohibits assignment without consent and "specifically excludes coverage to all newly formed entities." (Burlington Opp'n Br. 6.)

### 2) *The Allegations*

Lime Tree LLC argues that after it filed the Certificate of Merger with the Department of Treasury, it succeeded to all rights and liabilities of Lime Tree Associates by operation of law. Lime Tree LLC points to Section 42:1A-46(g) of the New Jersey Uniform Partnership Act in support, which provides that:

> When any merger or consolidation becomes effective under this section, for all purposes of the laws of this State, all of the rights, privileges and powers of each of the partnerships and other business entities that have merged or consolidated, and all property, real, personal and mixed, and all debts due to any of those partnerships and other business entities, as well as all other things and causes of action belonging to each of those partnerships and other business entities, shall be vested in the surviving or resulting partnership or other business entity, and shall thereafter be the property of the surviving or resulting domestic limited liability company or other business entity as they were of each of the domestic limited liability companies and other business entities that have merged or consolidated, and the title to any real property vested by deed or otherwise, under the laws of this State, in any of those domestic limited liability companies and other business entities, shall not revert or be in any way impaired by reason of this act;

N.J.SA. 42:1A-46(g). Lime Tree LLC claims that, under this provision, potential liability in the Brewer Action and the rights Lime Tree Associates had under the Policy were automatically vested in Lime Tree LLC by operation of law. (Lime Tree Moving Br. 10-11.)

4

Burlington agrees that a merger like Lime Tree LLC's would transfer rights under the Policy, but only "in the absence of an explicit provision [in the Policy] prohibiting the transfer of policy rights through merger or by operation of law." (Burlington Opp'n Br. 8-9.) Burlington argues that the Policy contains such a provision and points to two sections that it believes defeat Lime Tree LLC's claims for coverage here: (1) the no assignment clause in the "Common Policy Conditions" and (2) the definition of an "insured," as modified by the "New Entities Exclusion." (Burlington Opp'n Br. 9-10.)

First, Burlington points to Section B of the Common Policy Conditions, which states, "The first Named Insured . . . is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made part of this policy." Additionally, Section F provides, "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." Because Burlington never gave consent, it argues that these provisions bar any transfer of the Policy here.

Second, Burlington argues that the Policy's "New Entities Exclusion" modified the definition of an insured by deleting the fourth paragraph of "Section II – WHO IS AN INSURED." That paragraph had provided: "Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization." Burlington claims Lime Tree LLC is a newly formed entity subject to the language of this exclusion, thus defeating its claim for coverage. (Burlington Opp'n Br. 10.)

5

*3) The Merger Vested Lime Tree LLC with All Rights in the Policy*

Whether the Policy language prevented a transfer of contract rights following and through the merger is an issue not yet decided by the New Jersey Supreme Court. However, the Appellate Division of New Jersey and courts of this Circuit have addressed it. *See Segal v. Greater Valley Terminal Corp.,* 83 N.J. Super. 120 (App. Div. 1964); *DBA Distribution Services, Inc. v. All Source Freight Solutions, Inc.*, No. 11-3901, 2012 WL 845929 (D.N.J. Mar. 13, 2012) (Pisano, J.); *Prof'l Buyer's Guild, LLC v. Ace Fire Underwriters Ins. Co.,* No. 06-2127, 2007 WL 3227183 (D.N.J. Oct. 30, 2007) (Brown, C.J.); *Federal Insurance Co. v. Purex Indus., Inc.*, 972 F. Supp. 872, 889 (D.N.J. 1997) (Simandle, J.). These decisions all hold that in order to prevent a transfer of rights through merger or by operation of law, the contract's language must be explicit—the exclusionary language must have anticipated such a transfer and purposefully prevented it. This authority, though not binding here, is consistent with both the policy underlying no assignment clauses and New Jersey's construction of insurance agreements generally, and the Court views Lime Tree LLC's claim for defense and indemnification in light of their analysis.

Pursuant to New Jersey statutory law, the surviving entity of a merger is automatically vested with "all of the rights, privileges and powers of each of the partnerships and other business entities that have merged or consolidated, and all property, real, personal and mixed, and all debts due to any of those partnerships and other business entities, as well as all other things and causes of action belonging to each of those partnerships and other business entities." N.J.S.A. 42:1A-46(g). Burlington does not dispute—and this Court now finds—that the merger here caused all rights and benefits under the Policy to be transferred from Lime Tree Associates to Lime Tree LLC under N.J.S.A. 42:1A-46(g). But Burlington contends that the Policy's

6

exclusionary language overrides the effect of the statute. (Burlington Opp'n Br. 9.) Specifically, Burlington argues that any transfer of rights under the Policy was in breach of (and therefore barred by) the no assignment clause contained in the Common Policy Conditions and the New Entities Exclusion, which modified the Policy's standard definition of an insured. (Burlington Opp'n Br. 8-12.)

That argument was rejected by the New Jersey Appellate Division in *Segal v. Greater Valley Terminal Corp.*, which considered whether a no-assignment clause in a real estate lease barred the transfer of rights thereunder following a statutory merger. While recognizing that restrictions on alienation are subject to strict construction under New Jersey law, the *Segal* court held that "[t]he passage of such interests under the [merger] statute, whether labeled an assignment, sublease, or transfer, is by operation of law, and it will not operate as a breach of a covenant barring assignment." *Segal,* 83 N.J. Super. at 124.

This position has since been adopted by decisions in this Circuit. The insurer in *Federal Insurance Co. v. Purex Indus. Inc.* argued that it was not obligated to provide coverage because Purex was not the named insured and—even if rights under the policy were transferred to Purex through its merger with the named insured—a no assignment clause in the Policy barred its claims. *Federal Insurance Co.*, 972 F. Supp. at 889. The district court rejected the insurers' arguments, but found that factual issues regarding the alleged merger precluded summary judgment. *Id.* at 890. In so holding, the court in *Federal Insurance Co.* found that, assuming Purex "is the surviving corporation of a merger transaction, it is true as a matter of law that the insurance policy previously owned by [the named insured] would have transferred to Purex along with the other assets involved in the transaction, absent a *specific provision* in the policy to the contrary." *Id.* at 890 (emphasis supplied); *see also* Burlington Opp'n Br. 8 ("Burlington

7

agrees that in the absence of an explicit provision prohibiting the transfer of policy rights through merger or by operation of law, a merger like LLC's would vest the merged entity with the policy rights of the previous entity.") Other courts of this Circuit have reasoned similarly. *See Brunswick Corp. v. St. Paul Fire and Marine Ins. Co.*, 509 F. Supp. 750, 753 (E.D. Pa. 1981) ("In the absence of *explicit language prohibiting assignment* of the policy *through merger*, the Court will not deprive the surviving corporation of the protection bargained and paid for by the merged corporation.") (emphasis supplied).

From the analysis in these cases it appears that, to defeat Lime Tree LLC's claim for coverage here, the Policy language must be explicit—as distinguished from a generic clause barring assignment. To show there is such specificity in the Policy, Burlington first points to the endorsement in the New Entities Exclusion, which eliminated the limited 90 day coverage applicable to "newly acquire[d]" or newly formed entities. Burlington cites *Brit UW Ltd. v. Briones*, 2013 WL 3242516 (W.D. Tex. June 25, 2013) in support of its belief that Lime Tree LLC is a newly formed entity and should therefore be denied coverage. In *Brit*, the named insureds included Kicaster Korner Bar and its owner, Richard Briones, Jr. Upon Briones' death, his estate established a new entity for the business' operation, Kicaster Korner Bar & Grill, LLC ("LLC"), which later attempted to obtain coverage under the Briones policy. But the policy contained an endorsement that deleted a newly-acquired entities clause that would have provided limited coverage to newly formed or acquired entities: "Any organization you newly acquire or form other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interests, will qualify as a named insured if there is no other similar insurance available to that organization ..." *Id.* at *5. The district court determined that LLC was a "newly formed" entity and had no rights in the deceased's policy.

8

While the new entities exclusion under the Policy here is identical to that in *Brit*, the facts are quite different. The court in *Brit* was faced with a successor entity that was created after the death of the named insured. Here we consider an entity that, upon merging with the named insured, succeeded to all of its rights automatically and as a matter of law under N.J.S.A. 42:1A-46(g). Lime Tree LLC is not a "newly acquire[d]" entity. It is a continuation of Lime Tree Associates, distinguishing it from the LLC formed after the insured's death in *Brit.*

Burlington's contention that the no-assignment clause in the Common Policy Conditions bars coverage is similarly unpersuasive. In apparent agreement with this district's analysis in *Federal Insurance Co.,* Burlington argues that the Policy language here is sufficiently "explicit" to bar Lime Tree LLC's claim for coverage. But the language cited by Burlington—"rights . . . under this policy may not be transferred without our written consent"—does not reference transfer by merger or even by operation of law and, significantly, is indistinguishable from that language previously rejected by New Jersey state courts and the federal courts of this Circuit. In *Prof'l Buyer's Guild, LLC v. Ace Fire Underwriters Ins. Co.,* 2007 WL 3227183 (D.N.J. Oct. 30, 2007), the policy language prohibited "assignment, transfer, encumbrance or other disposition" without the insurer's consent. *Id.* at *2. The district found that, as in *Segal*, the exclusionary clause should be "narrowly construed" and given effect "only where [its] language specifically addresses the issue at hand." *Id.* at *4. On that basis, the district court held that the policy language—arguably broader than the no assignment clause at issue here—was insufficiently explicit to bar a transfer of rights through merger. The language cited by Burlington also falls well short of that found sufficient to bar transfer in *DBA Distribution Services, Inc. v. All Source Freight Solutions, Inc.*, 2012 WL 845929 (D.N.J. Mar. 13, 2012). There the court found that contract rights were not transferred through merger, because the language made clear that,

9

without consent, the agreement "shall not be assignable or transferable *by operation of law*." *Id.* at *4 (emphasis supplied).

This Court is satisfied that the Policy language, viewed in the light of prior decisions discussed above, is not more than a generic no assignment clause. It is neither "specific" nor "explicit" with regard to transfer by merger or operation of law, and is insufficient to bar coverage here. The rationale for no assignment clauses is simple and pragmatic: the clause protects insurers from unforeseen risks by requiring the insurer's approval prior to transfer. Critically, however, the need for such protection abates entirely when the transfer or assignment occurs after the event giving rise to coverage because by that time the risk is no longer unforeseen. *See Federal Insurance Co.*, 972 F. Supp. at 889; 3 Couch on Insurance § 35.8 ("The purpose of a no assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity."). Rather than an increase in *potential* risk, Burlington is now faced with a defined and unchanging claim for *payment* under the policy. For this reason, "courts have refused to apply no assignment clauses to transfers occurring by operation of law because such transfers do not entail any increase in the risk or hazard assumed by the insurer." *Federal Insurance Co.*, 972 F. Supp. at 889.

Finally, a finding of coverage here is in harmony with New Jersey's general construction of insurance agreements, which requires strict application of clauses that are designed to limit coverage. *See Mazzilli v. Accident & Cas. Ins. Co.*, 35 N.J. 1 (N.J. 1961). The New Jersey Supreme Court has instructed courts to interpret policies in favor of insureds where the insurance policy's language is "insufficiently clear to justify depriving the insured of her reasonable

expectation that coverage would be provided." *See Sparks v. St. Paul Insurance Co.*, 100 N.J. 325, 495 (N.J. 1985)

Based on the foregoing, this Court grants Lime Tree LLC's motion for judgment on the pleadings and finds, as a matter of law, that it is entitled to a defense and indemnification against the Brewer complaint.

### B. Application for Counsel Fees and Costs

New Jersey Court Rule 4:42-9(a)(6) permits, at the discretion of the trial court, an award of counsel fees in "an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." This rule seeks to protect the expectations (and investment) of the insured—the award of counsel fees "gives an insured the full benefit of his insurance contract without unanticipated expenses over and above the premiums paid." *Corcoran v. Hartford Fire Ins. Co.*, 132 N.J. Super. 234, 246 (App. Div. 1975). As the New Jersey Supreme Court explained, its purpose is to "discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection." *Sears Mortgage Corp. v. Rose,* 134 N.J. 326, 355 (N.J. 1993).

In *Baughman v. United States Liability Ins. Co.,* the District Court awarded counsel fees incurred by the insured both in defending the claims for which it was entitled to coverage and in pursuing its claims for defense and indemnification from the insurer directly. While the insurer argued that attorney's fees should not be imposed—because it "denied coverage in good faith, given the complex legal question regarding the scope of the pollution exclusion"—the District Court noted that New Jersey courts have "repeatedly found that the absence of bad faith and the complexity of the legal issues are not grounds to deny fees." *Baughman v. United States*

11

*Liability Ins. Co.*, 723 F. Supp. 2d 741, 747 (D.N.J. 2010) (Simandle, J.); *see also* Pressler, & Verniero, *Rules Governing the Courts of the State of New Jersey*, Comment R. 4:42.9(a)(6) ("[N]either the insurer's lack of bad faith nor the novelty of the legal issue on which it relies will preclude the discretionary allowance of a fee against it."). This is so, the *Baughman* court found, "because the rule is not merely to deter insurers from denying coverage without reason, but also to ensure that the insureds receive the full benefit of their purchased coverage." *Baughman*, 723 F. Supp. 2d at 747.

Consistent with this authority, the Court finds that as a successful claimant Lime Tree LLC is entitled to an award of counsel fees. Burlington accepted the defense and indemnification of *Lime Tree Associates* for claims asserted in the Brewer Action, but declined to defend and indemnify *Lime Tree LLC* even though it knew about their valid statutory merger. Although Burlington's refusal may not have been in bad faith, denial of counsel fees here would deprive Lime Tree LLC of the full benefit of its insurance contract.

### III. <u>Conclusion</u>

For the foregoing reasons, plaintiff Lime Tree LLC's motion for judgment on the pleadings and for counsel fees is granted, and Burlington's cross-motion for judgment on the pleadings is denied. An appropriate order will be entered.

|  |  |
|---|---|
| Date: November 25, 2014 | /s/ Katharine S. Hayden<br>Katharine S. Hayden, U.S.D.J. |